# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASHLEY PAITH and RON PATTERSON,<br>        Plaintiff,<br><br>    v.<br><br>COUNTY OF WASHINGTON;<br>WASHINGTON COUNTY CORRECTIONAL<br>FACILITY; WARDEN JOSEPH PELZER,<br>individually and in his capacity as Warden of the<br>Washington County Correctional facility; and<br>CAPTAIN KING, individually and in his capacity<br>as an Officer with the Washington County<br>Correctional Facility,<br>        Defendants. | Civil Action No. 06-00806<br>Judge Nora Barry Fischer |

## MEMORANDUM OPINION

Plaintiffs Ashley Paith and Ron Patterson filed this civil action against Defendants County of Washington ("County"), Washington County Correctional Facility ("Correctional Facility"), Warden Joseph Pelzer, and Captain King. They allege cruel and unusual punishment in violation of the Fifth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution as well as state causes of action for intentional infliction of emotional distress and assault and battery. This action stems from events occurring during Paith's November of 2003 and December of 2005 through March of 2006 incarcerations, and Patterson's incarceration during April of 2003 through March of 2004. Presently before the court is the Defendants' Motion for Summary Judgment [29] ("Defendants' motion") and Plaintiffs' Cross-Motion for Summary Judgment [43] ("Plaintiffs' motion").

## PREFACE

As a threshold matter, the Court notes that *both* parties attached affidavits, transcripts of depositions, and other evidentiary sources to their briefs containing "facts" not specified in their

respective concise statement of facts. However, Local Rule 56.1 exists to streamline the summary judgment procedure by requiring (1) the moving party to set forth "the facts essential for the court to decide the motion for summary judgment, which the moving party contends are undisputed and material, including any facts which for purposes of the summary judgment motion are only assumed to be true," W.D. Pa. L.R. 56.1(B)(1), and, (2) for the opposing party, to specifically admit or deny the same, set forth a basis for any denial, and to set forth "any other material facts that are allegedly at issue, and/or that the opposing party asserts are necessary for the court to determine the motion for summary judgment," W.D. Pa. L.R. 56.1(C)(1). Accordingly, to the extent the parties include alleged "facts" not in their respective concise statements of fact but in other sources attached to their briefs, the Court finds that the parties' failure to place said facts before the Court as required by the Local Rules (i.e., in a concise statement of fact) indicates either (1) said fact(s) is not "essential" for the Court's decision of the motion (from the perspective of the moving party) and/or (2) said fact(s) is not "necessary" for the Court's determination of the motion (from the perspective of the opposing party). The Court now turns to the facts.

## FACTS[1]

Following a violent domestic dispute, Ashley Paith was arrested and then incarcerated in the

---

[1] The Court notes that the Defendants failed to comply with Local Rule 56.1, which requires "[a] separately filed" concise statement of material facts. W.D.Pa. L.R. 56.1(B)(1). On the contrary, Defendants included their "Undisputed Statement of Facts" within their Brief in Support of Summary Judgment. (*See* Docket No. 30). While the same does not technically comply with the Local Rule, considering the lack of an objection from the Plaintiffs and the fact that the Plaintiffs were able to respond to Defendants' statement despite Defendants' noncompliance, the Court finds that no further action or sanction is required.

Unless otherwise noted, the Plaintiffs admit the facts cited in this section.

Washington County Correctional Facility on November 8, 2003.[2] (Docket No. 30 at ¶2; Docket No. 38 at ¶2). While confined, Paith assaulted corrections officers and urinated in her cell, for which she was disciplined. (Docket No. 30 at ¶2; Docket No. 38 at ¶2). She was released four days later on November 11, 2003. (Docket No. 30 at ¶2; Docket No. 38 at ¶2). Paith's initial incarceration overlapped with her father and co-Plaintiff Ron Patterson's ongoing sentence in the Washington County jail, which began on or about April 5, 2003. (Docket No. 30 at ¶4; Docket No. 38 at ¶4). On or about November 18, 2003, after Plaintiff Paith was released, Plaintiff Patterson was transferred from Washington County Correctional Facility to the Allegheny County Jail, but later transferred back to the Washington County Correctional Facility approximately one week prior to his release date, on or about March 22, 2004. (Docket No. 30 at ¶¶4-5; Docket No. 38 at ¶¶4-5).

More than two years later, on Christmas Day, 2005, the Pennsylvania State Police arrested Paith on a parole violation detainer and she was again incarcerated in the Washington County Correctional Facility. (Docket No. 30 at ¶3; Docket No. 38 at ¶3). This incarceration lasted six months, from approximately December 25, 2005, to March 24, 2006. (Docket No. 30 at ¶3; Docket No. 38 at ¶3). During her second incarceration, Paith received medical attention on at least eight occasions, including routine psychiatric evaluations and prescription medication.[3] (Docket No. 30

---

[2] Plaintiffs allege in their Complaint that Paith's initial incarceration occurred on or about January of 2004. (*See* Docket No. 1, Exh. "Complaint", at ¶¶7-13) (hereinafter, "Complaint"). However, Plaintiffs later verified that Paith was not incarcerated in Washington County Correctional Facility in 2004, (*see* Docket No. 65), and, in fact, admitted that her initial incarceration occurred in or around November of 2003, (*see* Docket No. 30 at ¶2; Docket No. 38 at ¶2).

[3] Specifically, as agreed by the parties' in their respective statement of facts, Plaintiff Paith received the following medical treatment while incarcerated: a psychiatric evaluation on December 27, 2005; saw "Dr. Kolli" on January 10, 2006; had blood drawn on January 12, 2006; "was seen" on January 16, 2006; "seen again" on February 6, 2006 and February 7, 2006; and finally, "was seen"

at ¶3; Docket No. 38 at ¶3).[4]

Following an argument with a nurse, Paith was disciplined and ordered to a disciplinary cell, known as the "green room."[5] (Docket No. 38 at II, ¶2). The green room is a padded disciplinary cell equipped only with a grated drainage pipe in the middle of the floor. (Docket No. 38 at II, ¶ 2). It lacks a bed as well as "commode facilities" but rather, according to Plaintiffs, "contains an open pipe approximately eight (8) inches in diameter which is to be utilized for urination and/or defecation." (Docket No. 38 at II, ¶2). Further, a large window displays the prisoner in the "green room" to guards located at the adjacent processing desk. (Docket No. 38 at ¶ 2). Plaintiff Paith asserts that she visited the green room on a number of separate occasions for a variety of reasons, including an argument with a nurse regarding her medication and an instance where she "became emotionally upset and verbally expressed [her] frustration and anger, and slammed the door."[6] (Docket No. 38

---

on February 27, 2006 and March 1, 2006, "for other complaints." (*See* Docket No. 30 at ¶3; Docket No. 38 at ¶3). However, Plaintiff Paith alleges that "[a]fter a delay Paith was forced to take medication without food resulting in stomach problems and rendering a medication ineffective." (Docket No. 38 at ¶7).

[4] The Court notes that Defendants provide no further facts; however, Plaintiffs provide additional facts in their "Plaintiff's [sic] Concise Statement of Undisputed Material Facts," in particular as to the "green room" and the Washington County Correctional Facility's grievance procedure (*See* Docket No. 38 at II, ¶¶1-12). However, a plain reading of "Plaintiff's [sic] Concise Statement of Undisputed Material Facts" reveals that the same amounts to paragraphs extracted from affidavits of Plaintiff Paith and a former guard and "copied and pasted" as facts, which is self-evident by the use of the first person.

[5] At the April 22, 2008 motion hearing, the Court viewed a tape depicting Plaintiff Paith's stay in the green room. The Court's view of the tape comports with the physical description of the green room provided by Plaintiffs.

[6] Plaintiff Paith references no other visits to the green room. Furthermore, as to said visits, Plaintiff Paith fails to specify how long she remained in the green room.

at II, ¶¶2 & 5).

## PROCEDURAL HISTORY

On January 3, 2006, Plaintiffs Paith and Patterson initiated this action by filing a Praecipe for Writ of Summons in the Court of Common Pleas of Washington County. On May 17, 2006, Plaintiffs filed their Complaint alleging (1) "civil rights violations" stemming from an alleged deprivation of necessary and adequate medical care and confinement conditions appropriate to Paith's medical condition under the Fifth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution;[7] (2) assault and battery against Defendant Captain King; (3) intentional infliction of emotional distress against all Defendants; and (4) a "DeShaney action under 42 U.S.C. § 1983" against all Defendants. On June 16, 2006, pursuant to 28 U.S.C. § 1331, Defendants removed Plaintiffs' Complaint to this Court.[8] On September 10, 2007, Defendants filed their Answer and Affirmative Defenses. (Docket No. 28).

As to Defendants' motion, on October 2, 2007, Defendants filed their pending motion for summary judgment requesting judgment on all claims. On December 14, 2007, after two extensions of time to respond, Plaintiffs filed Plaintiffs' Reply to Motion for Summary Judgment (Docket No. 37). On April 14, 2008, Defendants filed a Supplemental Brief in Support of Motion for Summary Judgment (Docket No. 62). On April 30, 2008, Plaintiffs filed Plaintiffs' Response to Defendants' Supplemental Brief in Support of Motion for Summary Judgment (Docket No. 66). On May 9, 2008, after the Court granted them leave to do so, Defendants filed their Reply Brief in Response to

---

[7] Plaintiffs do not specify against whom they plead Count I for "civil rights violations."

[8] On April 6, 2007, the instant matter was reassigned to the undersigned Judge.

5

Plaintiff's to Defendants' Supplemental Brief in Support of Motion for Summary Judgment (Docket No. 69).

As to Plaintiffs' motion, on January 3, 2008, Plaintiffs filed their pending cross-motion for summary judgment requesting judgment "regarding [Plaintiff] Paith's Eighth Amendment claim concerning her green room confinement." (Docket No. 43 at 2). On February 15, 2008, after two extensions of time to respond, Defendants' filed their Reply to Plaintiffs' Cross-Motion for Summary Judgment within which Defendants also included a Motion to Strike Affidavits of Richard Brezenski, Ron Patterson and Alex Martos (Docket No. 53).[9] On March 7, 2008, Plaintiffs filed their Reply Brief to Defendants' Response to Plaintiffs' Cross-Motion for Summary Judgment (Docket No. 56).

Relevant to both pending motions, on March 7, 2008, Defendants filed a Request for Oral Argument on Motions for Summary Judgment (Docket No. 57), which the Court granted on the same day. On April 22, 2008, the Court held a motion hearing, at which it heard oral argument and received evidence by way of video from December 25, 2006 and December 26, 2006. Thereafter

---

[9] The Court notes that Defendants' "Motion to Strike Affidavits of Richard Brezenski, Ron Patterson and Alex Martos" contained within its Reply to Plaintiffs' Cross Motion for Summary Judgment, (*see* Docket No. 53 at 1-2), is procedurally defective insofar as said motion was not "accompanied by a proposed appropriate order of court." W.D. Pa. L.R. 7.1(B). Despite this procedural infirmity, the Court notes that Richard Brezenski, Ron Patterson, and Alex Martos lack personal knowledge specifically as to Plaintiff Paith's claims arising out of her second incarceration at the Washington County Correctional Facility. *See* Fed.R.Civ.P. 56(e)(1). In response, Plaintiffs contend that Federal Rule of Evidence 406 ("Habit; Routine Practice") provides evidence of routine practice of an organization. (Docket No, 56 at 2-3). However, because the affidavits do not save Plaintiffs' claims from summary judgment, the Court declines to address the merits of Defendants' motion to strike. Nevertheless, this Court is cognizant of the fact that a "court may not consider evidence on a motion for summary judgment that would not be admissible at trial," *Razzoli v. Secretary of Navy*, Civil No. 3:CV-06-1833, 2008 WL 906441, at *8 (M.D. Pa. March 31, 2008) (citing *Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir.1999)).

on April 29, 2008, Plaintiffs filed a Motion to Withdraw Specific Claims with Prejudice, (Docket No. 64), which the Court granted the next day, dismissing the following claims: (1) Plaintiff's "civil rights violations" claims against Defendant Correctional Facility as well as Warden Pelzer and Captain King in their official capacities; (2) Plaintiffs' claims under the Fifth and Ninth Amendments to the United States Constitution; (3) Plaintiffs' state law claims against Defendants Warden Pelzer and Captain King in their official capacities, County, and Correctional Facility; and (4) Plaintiffs' claims alleging incidents that occurred in 2003 as time barred.[10] (Docket No. 65). However, as a result of Plaintiffs' withdrawal of certain claims, on June 3, 20008, the Court held a telephonic status conference in order to clarify the remaining claims. The Court found that the following claims remain: (1) Eighth and Fourteenth Amendment claims against Washington County as well as Warden Joseph Pelzer and Captain King in their individual capacities; (2) intentional infliction of emotional distress against Warden Joseph Pelzer and Captain King in their individual capacities; and (3) a *DeShaney* action against Washington County as well as Warden Joseph Pelzer and Captain King in their individual capacities. (*See* Docket No. 70). In addition, the Court allowed the parties to file additional briefs as to policies and procedures related to the "green room." (Docket

---

[10] Based on the Court's review of the Complaint, included in the time-barred claims are (1) Plaintiff Paith's claim for assault and battery against Defendant Captain King, which allegedly occurred during her initial incarceration, (*see* Complaint at ¶9), and (2) all of Plaintiff Patterson's claims insofar as they stem from his incarceration at Washington County Correctional Facility in November of 2003 and until his transfer on or about November 18, 2003, (*see* Complaint at ¶¶19-20). Further, the Court notes that Plaintiffs' Complaint does not plead any claims occurring in the time that Plaintiff Patterson returned to the Washington County Correctional Facility before his discharge, on or about March 15, 2005 through March 22, 2005. Hence, based on the withdrawn claims and facts pled in the Complaint, it appears that no claims remain as to Plaintiff Patterson. Nevertheless, to the extent that Plaintiff Patterson maintains that the remaining *DeShaney* claim or intentional infliction of emotional distress claim remain as to him, the following analyses apply equally to him as well as Plaintiff Paith.

No. 70). In compliance with the Court's instructions, Defendant filed their Supplement to Motion for Summary Judgment on June 20, 2008, (Docket No. 73), and Plaintiff filed Plaintiff's Response to Defendants' Supplement to Motion for Summary Judgment (Final) on June 27, 2008, (Docket No. 74). Finally, three days later on June 30, 2008, Defendant filed a Reply to Plaintiff's Reply to Defendants' Supplement to Motion for Summary Judgment (Docket No. 75).

It goes without saying that the instant motions are fully briefed and ripe for disposition.

## STANDARD OF REVIEW

Summary judgment may only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Pursuant to Rule 56, the Court must enter summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In evaluating the evidence, the court must interpret facts in the light most favorable to the non-moving party, and draw all reasonable inferences in his favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007). Initially, the burden is on the moving party to demonstrate that the evidence in the record creates no genuine issue of material fact. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). While the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the admissible evidence in the

8

record would be insufficient to carry the nonmovant's burden of proof at trial. *Celotex*, 477 U.S. at 322-323. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324. The nonmoving party "cannot simply reassert factually unsupported allegations contained in its pleadings." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

After reviewing all the relevant briefs, it is clear that no genuine issue of material fact remains in dispute and summary judgment is appropriate at this time. Accordingly, Defendants' motion for summary judgment will be granted and the Plaintiffs' cross-motion for summary judgment will be denied.

## ANALYSIS[11]

The Defendants' original motion offers five grounds in support of summary judgment: (1) the claims are barred by the statute of limitations; (2) the Plaintiffs have failed to extinguish their available remedies provided by the Prison Litigation Reform Act of 1996 ("PLRA"); (3) the Plaintiffs have failed to state a claim under the Eight Amendment; (4) the Plaintiffs have not established that Pelzer and King were personally involved in the alleged wrongful conduct; and (5) the Plaintiffs have failed to establish a state claim against any of the Defendants in their official capacities. (Docket No. 29). However, as a result of Plaintiff's motion to withdraw as well as Defendants' concession at the motion hearing that the PLRA does not apply here, with which the

---

[11] While Defendants' motion seeks summary judgment (as well as judgment) as to all of Plaintiffs' claims, Plaintiffs' motion only seeks "judgment in her favor for her federal claim of constitutionally cruel and unusual punishment based upon her confinement in a so-called green room." (Plaintiffs' motion at ¶2).

9

Court agrees,[12] the Court need only address the remaining claims as set forth during the June 3, 2008 telephonic status conference: (1) Eighth Amendment claims against Washington County as well as Warden Joseph Pelzer and Captain King in their individual capacities;[13] (2) intentional infliction of emotional distress against Warden Joseph Pelzer and Captain King in their individual capacities; and (3) a *DeShaney* action against Washington County as well as Warden Joseph Pelzer and Captain King in their individual capacities. The Court will address each, in turn.

1. *Eighth Amendment claim*

Generally, a prison official violates the Eighth Amendment when two elements are satisfied. The first is objective, requiring that there be a "sufficiently serious" deprivation. *Farmer v. Brennan*,

---

[12] The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under Section 1983...by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies that are available are exhausted." 42 U.S.C. §1997e(a). The statute defines prisoner as "any person incarcerated or detained." 42 U.S.C. §1997e(h). The U.S. Court of Appeals for the Third Circuit has held that the PLRA requires that Plaintiffs extinguish their remedies "only if the plaintiff is a prisoner at the time of filing." *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 314 (3d Cir. 2001). Other circuits are in accord. *Greig v Goord*, 169 F.3d 165, 167 (2d Cir. 1999); *Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1998); *Doe By and Through Doe v. Washington County*, 150 F.3d 920, 924 (8th Cir. 1998); *Page v. Torrey*, 201 F.3d 1135, 1139 (9th Cir. 2000); *Harris v. Garner*, 216 F.3d 970, 974-975 (11th Cir. 2000). Accordingly, because neither Paith nor Patterson were "incarcerated or detained" at the time they filed the instant cause of action, their suit is not barred by the PLRA's exhaustion requirement.

[13] While Plaintiffs make reference to the prison grievance procedure in the "Statement of Facts" section of their Complaint, (*see* Complaint at ¶21), as well as in their "Plaintiff's [sic] Concise Statement of Undisputed Material Facts," (*see* Docket No. 38 at II, ¶5), they fail to specifically plead a claim for the same under Count 1, entitled "civil rights violations." Nonetheless, to the extent that either Plaintiff pleads a Fourteenth Amendment claim for Defendants' administration of the prison grievance system, that claim fails because there is no due process right to a prison grievance procedure. *See Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) ("A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate") (citation omitted); *Mincy v. Chmielewski*, Civil Action No. 1:05-CV-0292, 2007 U.S. Dist. LEXIS 14788, at *27, n. 4 (M.D. Pa. Mar. 2, 2007) ("Prisoners do not have a constitutional right to prison grievance procedures") (citations omitted).

511 U.S. 825, 834 (1994) (citations omitted). A "sufficiently serious" deprivation is one that "result[s] in the denial of the minimal civilized measure of life's necessities." *Id.* (internal quotation marks and citation omitted). The second element is harder to satisfy, as it conditions relief upon the prison official's "deliberate indifference" to inmate health or safety. *Id.* "Deliberate indifference" resembles the criminal law's "subjective recklessness" standard, meaning that a liable prison official must know of, and then recklessly and deliberately disregard, a sufficiently serious threat to inmate health and safety. *Id.* at 839-840.

In the present case, Plaintiff Paith charges that Defendants violated her Eighth Amendment protection against cruel and unusual punishment in two ways, namely medical mistreatment and poor confinement conditions.

    A.    *Medical treatment*

Plaintiff first argues that the medical treatment she received from Defendants violated her Eighth Amendment protection against cruel and unusual punishment.

When confronted with a claim of prisoner medical mistreatment, the Supreme Court has held that "deliberate indifference to [a prisoner's] serious medical needs" is required to violate the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976) ("We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment") (internal quotation marks and citation omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. For a prisoner's medical need to be considered serious:

    [it] must be such that a failure to treat can be expected to lead to

11

> substantial and unnecessary suffering, injury, or death. Moreover, the condition must be one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.

*Woloszyn v. County of Lawrence*, 396 F.3d 314, 320 (3d Cir. 2005) (internal quotations and citation omitted). Furthermore, "[i]t is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute deliberate indifference." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

In the present case, Plaintiff's medical care at the hands of Defendants was not in violation of the Eighth Amendment. While in Defendants' custody, Plaintiff received treatment for both her fractured hand and her mental health. (Docket No. 1-9, Complaint, ¶ 10, 15; Docket No. 30-4, 30-7). At no point during her incarceration was Plaintiff a victim of Defendants' "deliberate indifference" nor did she ever suffer from a "serious medical need." Moreover, even if Plaintiff's claims regarding poor medical care are true, she has failed to establish that Defendant' operated with some "culpable state of mind." Therefore, as Plaintiff has failed to show that her medical care (or lack thereof) by Defendants has satisfied any of the elements for establishing an Eighth Amendment violation for medical mistreatment, her claim is without merit.

      B.    *Confinement conditions (Plaintiff Paith's motion for summary judgment)*

Plaintiff next argues that her conditions in solitary confinement, specifically the absence of a traditional toilet and her lack of privacy, violated her Eighth Amendment protection against cruel and unusual punishment.

To determine if a prisoner's confinement conditions violate the Eighth Amendment, "[a] totality of the circumstances test must be applied to determine whether the conditions of confinement

12

constitute cruel and unusual punishment." *Tillery v. Owens*, 907 F.2d 418, 426 (3d Cir. 1990). "The relevant considerations . . . include[] the length of confinement, the amount of time prisoners must spend in their cells each day, the opportunities for activities outside the cells, and the repair and functioning of basic physical facilities such as plumbing, ventilation and showers." *Id.* at 427. Moreover, the Supreme Court provides that "to the extent that [prison] conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "The Constitution does not mandate comfortable prisons," Justice Powell explains, and prisons "cannot be free from discomfort." *Id.* at 349. As Plaintiff only identifies two conditions of her confinement as cruel and unusual, i.e., the absence of traditional toilet and lack of privacy, the Court limits its analysis to the same. However, before turning to its analyses of these claims, the Court notes that it is well established that "solitary confinement does not, in itself, violate the Eighth Amendment."[14] *United States ex rel. Tyrrell v. Speaker*, 471 F.2d 1197, 1202 (3d Cir. 1973).

First, a lack of a traditional toilet, or any toilet at all, cannot, by itself, serve as the basis for an Eighth Amendment claim. *Whittle v. Blankenship*, Civil Case No. 4:06CV01014, 2007 U.S. Dist. LEXIS 89597, at *16. (E.D. Mo. Dec. 5, 2007) ("Plaintiff's complaint that the only toilet facility available to him was a hole in the floor with a grate over it ... fails. This type of toilet facility is

---

[14] Plaintiff fails to state the amount of time that she spent in the "green room." Though there is no uniform standard, the longer the stay in solitary confinement, the greater the chance it violates the Eighth Amendment. *See La Plante v. Southworth*, 484 F. Supp. 115, 121 (D.R.I. 1980) ("[T]he Supreme Court has never held that solitary confinement is per se unconstitutional, and lower courts have applied varying standards as to permissible duration"). As Plaintiff does not argue that the length of time she spent in solitary confinement was cruel and unusual punishment, the Court will not consider the issue.

common in prisons."); *Barker v. Vasquez*, Civil Case No. No. C-86-2221-DLJ, 1991 U.S. Dist. LEXIS 18173, at *14 (N.D. Cal. Dec. 16, 1991) ("The lack of toilet facilities . . . is not a basis for an Eighth Amendment violation."); *but see La Reau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972) (holding that the use of a "Chinese toilet," which is a hole in the ground, is too debasing and degrading to be permitted).[15] Second, as for prisoner privacy, "prisoners' legitimate expectations of bodily privacy from persons of the opposite sex are extremely limited." *Jordan v. Gardner*, 986 F.2d 1521, 1524 (9th Cir. 1993). Furthermore, a prisoner's involuntary exposure of his or her genitals in the presence of members of the opposite sex does not constitute a claim for relief under the Eighth Amendment because there is only *de minimis* injury. *See Boxer X v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006) (holding that "a female prison guard's solicitation of a male prisoner's manual masturbation, even under the threat of reprisal, does not present more than *de minimis* injury" and is therefore not an actionable Eighth Amendment claim) (citation omitted).

In the present case, the conditions that Plaintiff endured in the "green room" do not violate the Eighth Amendment.[16] The absence of a traditional toilet in the "green room" is not, by itself, cruel and unusual punishment. Plaintiff may point to *La Reau* as evidence that such a waste disposal facility is unconstitutional, but Plaintiff did not have to use the "green room's" drain as a toilet

---

[15] *La Reau* is distinguishable from the present case. In *Lareau*, the "Chinese toilet" could only be flushed from outside the prisoner's cell, which allowed human waste to accumulate. Furthermore, the prisoner in *La Reau* was confined for a period of five days and was not allowed to leave his cell under any circumstances. In the present case, Plaintiff relieved herself in a drain. Moreover, the amount of time that Plaintiff spent in the "green room" is unclear, and statements from former prison employees indicate that Plaintiff was able to leave the "green room" upon request and use a traditional toilet. (Docket No. 37-5; 53-3)

[16] The Court's viewing of the tape at the April 22, 2008 motion hearing displayed the Washington County Correctional Facility as a new and well-maintained facility.

because she had access to a traditional toilet outside of the "green room."[17] Plaintiff's lack of privacy also does not constitute an Eighth Amendment violation. Being seen naked by the opposite sex is not a serious enough indignity to be considered cruel and unusual punishment.[18] Moreover, as the Supreme Court has pointed out, prison can be restrictive, harsh, and uncomfortable. *See Rhodes*, 452 U.S. at 347. Therefore, Plaintiff's allegations that her confinement conditions violated her Eighth Amendment protection against cruel and unusual punishment are unfounded.[19]

2. *DeShaney action*

In a *DeShaney* action, a state can be held liable for failing to protect its citizens under certain

---

[17] In addition, Brian Hammett and Edward Hank, Jr., both prison employees during Plaintiff's incarceration, testified that prisoners in the "green room" had access to a traditional bathroom upon request. (Docket No. 53-2, at 1; 62-2, at 3). Furthermore, the Affidavit of Richard J. Brezenski is not inconsistent insofar his affidavit expressly limits his testimony to procedures when he worked as a guard, not during Plaintiff Paith's second incarceration. (*See* Docket No. 37-5 at ¶6) ("*During these times*, no provision was made to meet the prisoners needs for urination or defecation, showering or even bedding") (emphasis added). Regardless, the lack of a traditional toilet (or any toilet), standing alone, does not violate the Eighth Amendment. *See Whittle and Barker, supra*.

[18] Hank also testified that when a female prisoner in the "green room" needed to attend to a feminine hygiene issue, a female correctional officer would be brought to the "green room" to supervise. (Docket No. 62-2, at 5-6). Furthermore, Plaintiff's claim on this point would not be actionable under any other legal theory because her placement in the "green room" could be considered a legitimate object of her incarceration considering her unruly behavior. *See Johnson v. Pa. Bureau of Corrections*, 661 F. Supp. 425, 430 (W.D. Pa. 1987) ("[A] prisoner's right of privacy exists only so far as it is not fundamentally inconsistent with prisoner status or incompatible with the legitimate objects of incarceration") (citations omitted). In addition, Plaintiff Paith's lack of privacy claim is further belied by the fact that she removed her clothes, which is evidenced by the videotape viewed by the Court at the April 22, 2008 motion hearing. (*See* Docket No. 53-2 at ¶7) ("The video of the 26th clearly shows Ms. Paith having removed her outer garments while in the cell, leaving nothing on but her undergarments") (Affidavit of Brian Hammett).

[19] The Court notes that the Washington County Correctional Facility was found to be 100% in compliance with the requirements of the Pennsylvania Department of Corrections in the Fall of 2004 and the Spring of 2006. (Docket No. 73-3, 73-4).

15

circumstances. A *DeShaney* action operates as an exception to the Court's holding in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), where the Supreme Court concluded that the Fifth and Fourteenth Amendments' Due Process Clauses "confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.* at 196 (citations omitted). The basis for a *DeShaney* action is the state-created danger theory. Under that theory, "when state actors knowingly place a person in danger, the state actors may be liable for foreseeable injuries that result from their conduct, whether or not the victim was in formal state custody." *Ford v. Johnson*, 899 F. Supp. 227, 232 (W.D. Pa. 1995) (citing *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 200 (5th Cir. Tex. 1994)). To satisfy the state-created danger theory and prevail on a *DeShaney* action, a plaintiff must "meet a four-part test: (1) the harm ultimately caused to the plaintiff was foreseeable and fairly direct; (2) the state-actor acted in willful disregard for the plaintiff's safety; (3) there was some relationship between the state and the plaintiff; and (4) the state-actor used his authority to create an opportunity for danger that otherwise would not have existed." *Phillips v. County of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008) (footnote and citations omitted).

In the present case, Plaintiff Paith brings a *DeShaney* action claim against Defendants. The claim fails because it does not satisfy the four-part test laid out by Phillips. While Plaintiff was in a relationship with the state as a prisoner, the Complaint makes no attempt to satisfy the other three parts of the *Phillips* test and the voluminous briefing (as well as oral argument) fares no better. First, Plaintiff fails to identify the ultimate harm that she suffered and how that harm was foreseeable and fairly direct. Second, Plaintiff fails to describe how a state-actor acted in willful disregard of her safety. Finally, Plaintiff fails to establish how a state-actor used his authority to create an

opportunity for danger that otherwise would not have existed. Plaintiff's relationship with the state and her broad allegations of Defendants' improper conduct do not, by themselves, give rise to a legitimate *DeShaney* action.

      3.     *Intentional infliction of emotional distress*

"In order to sustain a claim for intentional infliction of emotional distress, the plaintiff must establish four elements: (1) the conduct of the defendant must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) the conduct must cause emotional distress; and (4) the distress must be severe. *Hitchens v. County of Montgomery*, No. 01-2564, 2002 WL 207180, at *9 (E.D. Pa. Feb. 11, 2002) (citations omitted). "A legally cognizable claim for intentional infliction of emotional distress must be based upon conduct that is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.' " *Hill v. City of Philadelphia*, 2008 WL 2622907, at *10 (E.D. Pa. 2008) (quoting *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998)). Here, the Court finds with little trouble that Defendants' actions, conducted within the confines of the law and in furtherance of the smooth and efficient operation and administration of a prison facility, fall far short of the conduct comprehended by the phrase "extreme and outrageous." Furthermore, "to recover for intentional infliction of emotional distress in Pennsylvania, a plaintiff must support the claim of emotional distress with competent medical evidence, in the form of expert medical evidence. *Hill*, 2008 WL 2622907, at *10 (citing *Kazatsky v. King David Memorial Park*, 527 A.2d 988, 995 (Pa.1987); *Debellis v. Kulp*, 166 F.Supp.2d 255, 281 (E.D. Pa. 2001)). Here, Plaintiff Paith has not proffered any medical evidence, let alone competent medical evidence, in support of her claim for severe emotional distress. As such, Plaintiff Paith's claim is without merit.

## CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment [29] is **GRANTED** and Plaintiffs' Cross-Motion for Summary Judgment [43] is **DENIED**. An appropriate order to follow.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: July 25, 2008

cc:    All counsel of record.